Good morning. We are joined now by Judge Joseph Weiss. Please keep in mind that Judge Weiss may have a question or two to raise from time to time. If you see him raise his hand, it means that he wants to ask a question. So we will be looking at him with that signal in mind, and you as well. The case is Spence v. The ESABGroup. Counsel, please. May it please the Court. My name is David George, and I represent the appellant, Charles Spence. I would like to reserve three minutes for rebuttal. Thank you, Mr. George. That's fine. The issue in this appeal is whether, under Pennsylvania law, a shipper who loads cargo onto a truck has a duty to make sure that the cargo it loaded is properly secured. The District Court granted summary judgment against Spence because it determined that ESAB, the shipper, and the appellee did not have a duty to make sure the cargo was secured. This Court should hold that a shipper has that duty, and it should, therefore, reverse the summary judgment and remand this case for trial. I plan to address three points today. First, the Pennsylvania Supreme Court held in the Kunkel case that a shipper who loads cargo onto a truck has a duty to make sure that no dangerous condition would be created by what was going aboard finally. The only way that a shipper can do that is to make sure that the cargo it loaded is secured and safe to be transported. I have a question on the Kunkel case, and maybe it's more directed to Judge Weiss, because I noticed in the Kunkel case that there was a Joseph F. Weiss and a Joseph F. Weiss Jr. who represented the appellant in that case, and I was wondering whether it's the same Judge Weiss. As a matter of fact, it was. In my prior life, I lost that case. Well, that is a very small world, Your Honor. We would hold that given the Pennsylvania Supreme Court's holding, there is the duty to secure. You want the shipper to be responsible for when it loads cargo for any, did you say, latent defects? No, Your Honor. That would be included, but that is not the test we are proposing. The Fourth Circuit has a case called United States v. Savage, and in that case, which the District Court chose not to rely on the Pennsylvania Supreme Court case and instead relied on the Fourth Circuit case, the rule is a shipper has no duty to secure cargo, has no duty to load cargo safely. If it loads the cargo, it is not liable for negligent loading unless the defect is latent. That's also pretty much what the federal regulations provide, isn't it? No, Your Honor. We would say it's not. The federal regulations, and I think this is where the District Court made the error, the federal regulations under the Federal Motor Carrier Safety Act only govern carriers. They govern trucking companies and truck drivers. Doesn't it impose your responsibility on the carriers to ensure that cargoes are safe? Yes, it does, and I think that there's no question of that, and we have never said otherwise. Mr. Cooper, do the regulations have any effect as between the trucker personally and the shipper? We would hold the regulations have, do not... Please answer the question. Do they have an effect between the trucker individually and the shipper who loads the cargo? Only so far as there is a duty on the trucker, but they are simply silent as to the shipper because shippers are not a regulated entity under that law. And the regulation is intended, is it not, for the safety of the public on the highways? Yes, Your Honor. I think that is clearly who the regulation is intended for, and the regulation says that the truck driver has a duty to make sure the cargo is secured. It has nothing... That is as to the general public. Yes. I think, Judge Weiss, I think that's exactly the point. The shipper has the general common law duty, and whether or not the regulations simply do not speak to what the shipper has to do. They're not a regulated entity, so you would not expect the regulations to speak at all to the shipper. The regulations only govern the truck driver and the trucking company. But don't they provide guidance here as to where responsibility should fall? No, Your Honor. We would think they don't because you can't say that one entity is regulated, the other is not. The fact that one entity, the truck... But if the federal regulations impose responsibility on the shipper to ensure that cargo is not dangerously loaded, doesn't that help us decide where the responsibility falls for ensuring that loading is properly done and not insecure and not dangerous? I think, Your Honor, the premise to that is that there is one party who has a duty, and that is not the case. Several parties can have duties. There's no question the truck driver has the duty to make sure it's secured. But, yes, Judge Weiss? Isn't this a case of preemption? No, Your Honor. We think that the district court, in essence, found preemption, but ESOP never pled preemption. It's never raised. And ESOP, in its brief, vehemently disclaimed preemption. This is a question of what are the Pennsylvania common law rules. And under Pennsylvania is a comparative negligence state. How about the Kennedy case? The Kennedy case... The savage case. The Kennedy case is of no precedent, and we think that it would be improper and wrong to consider. Under Pennsylvania law, the Kennedy case is an unpublished, non-precedential superior court decision. Well, can't we consider any source that would help us define what the Pennsylvania Supreme Court would hold to be the law? I think... Including the trial court opinion, if we wanted to? Judge Vanaski, I think your question, I think the answer is yes, but the way your question is phrased, I think, makes the point exact. What this court's job under Erie is to decide what would the Pennsylvania Supreme Court do. We know what the Pennsylvania Supreme Court will consider in making its decision. It cannot consider Kennedy. And it would be improper and actually violate the law of Pennsylvania to even cite Kennedy. Well, wait a minute. You set it up very well. I mean, it is our responsibility to divine, to predict what the Pennsylvania Supreme Court is going to decide. But here you have a decision from a middle-level appellate court. And if it's well-reasoned, if it makes a lot of sense, if it's well-constructed, why can't we consider it, among other things, in determining what the Supreme Court's going to decide? The Pennsylvania Supreme Court would not consider it, could not consider it. And the fact that it chose to be unpublished is a sign that they did not necessarily put the thought into it. And I think Kennedy has a major problem. How about the idea that the Supreme Court did not grant a leave to hear that case? Is that an indication that maybe it was properly decided? No. That is no indication. As we address in the reply brief around page 15, the Pennsylvania Supreme Court has repeatedly said that its denial of a discretionary review is exactly the same as a denial of certiorari, and it is of no independent legal significance. But I think – Couldn't we consider the fact that Kennedy included at least one standing Supreme Court justice, now Justice Aiken, or more? I don't – I do not think so. I think the fact that it's an unpublished decision, they chose not to publish it. But I think, Judge Venaske, if this court is concerned, there is a ready mechanism that it can use, and that is certification. Here we have a question of the Pennsylvania Supreme Court has held, in an opinion, obviously, from the 1950s, what a standard is. Since then, a number of states have come and gone on another side, and there are federal regulations involved. Before this court should hold that federal regulations or a majority rule has altered what the standard is in Pennsylvania, it should give the Pennsylvania Supreme Court at least the opportunity to act, and it can do that through certifying the question. And certification, of course, is a discretionary decision. Therefore, this court is not making work for Pennsylvania. If the Pennsylvania Supreme Court determines that it does not want to address the opinion, then it simply will deny certification. You know what I find interesting in Savage, in Kennedy, in the federal statute, and in so many other areas where you're talking about shipping and loading goods, which could be in boats and trains and planes, is that responsibility to secure cargo generally is either on the owner or the carrier. And it seems to me it's because they are most aware of the characteristics of the truck. They know the truck better than the shipper. The pilot knows the plane. The ship owner knows the ship better. And that's where responsibility generally falls as a matter of policy. Why isn't that good policy? I think the testimony in this case was that the truck's basically one truck similar to another and the way it is. But the one thing that varies is the cargo. And the way I look at it is more sets of eyes on the problem. But that's my point, is that the truck owner knows the characteristics of the truck better than the shipper and knows where that cargo should be put and where it should be secured better than anyone else. Yes, Your Honor, except the evidence is that is pretty much standard. The one thing that differs is the cargo. And what we have is this cargo was welding cargo and it had to be done in a certain way. And ESAB, the shipper, is the expert on its cargo. What it does is it makes this product and it loads it on trucks and it ships it. It knows... Yes, Your Honor, Judge Weiss? The cargo is described as shrink-wrapped. Now, where does the wrapping occur? Is it including the pallet and the cartons? Or is it simply the cartons that are shrink-wrapped? Your Honor, I don't know if that's in the record. I don't recall whether... ESAB does the shrink-wrapping, but I don't recall whether that included the shrink-wrapping of the pallets or not. But what we have is no one knows better than ESAB about the peculiar characteristics of this cargo, the center of gravity, what is needed to make sure that it's safe. So they should have a duty. If we were to follow the SAVAGE rule or rule like SAVAGE, are you still entitled to a jury trial? Yes, Your Honor. Under SAVAGE, if it's a latent defect, then the shipper has a duty. And we believe here the defect is latent. And we discussed this in our brief. And this follows the Fourth Circuit's opinion in this Franklin Stainless case. The fact that there was no blocking and bracing... Your Honor, if I may... Yeah, you may finish. Blocking... There was no blocking and bracing, which is setting up... And that was obvious. Yes. But as the Fourth Circuit recognized in the Franklin Stainless case, even if the securing device is obvious, it may not be obvious that it is dangerous to carry it in that condition. But in this case, your client participated in the loading of the shipment. But that does not matter given the facts of this are my client had asked, the first time he carried it, he complained, I do not like that it is not blocked and braced. And they told him, this is how we always carry it. We've not had problems. And so basically he knew they did not have the blocking and bracing. But he thought that was safe. And the reason he thought that was safe is when he complained, I don't think it's safe, he was told, this is how we always do it. We don't have problems. So at a minimum, even if this court were to adopt the SAVAGE rule, there is a jury question on was the danger obvious to Mr. Spence. Mr. George, thank you very much. Mr. Marion? Good morning. May it please the Court, my name is Charles Marion and I represent the Atelier, the Aesop Group, Inc. First, just quickly to answer Judge Weiss's question, the shrink wrap went around the cargo that had been placed on them. It went around it several times. And I believe that is in the record in some of the deposition testimony. Your Honors, I'd like to begin by addressing some of the points made by Mr. George and then make a couple of my own and, of course, entertain any questions you may have. The Kunkel decision, which Mr. George is so concerned with, does not even talk about, let alone establish, any law on the duty to secure cargo. It did allow a recovery by a truck driver against the shipper. That is correct, Your Honor. And in Kunkel, the State of Pennsylvania followed the Contributory Negligence Rule. So the Supreme Court, in effect, decided there was no negligence that would be attributable to the trucker. Correct? That is correct. However, the facts of that case were very different than this one. Not a whole lot different. I had little knowledge of those facts. No, I understand that, Your Honor. However, in Kunkel, as you'll recall, the cargo was loaded unevenly, 1,600 pounds on one side, about 7,500 on the other. Yes, but, Mr. Marion, we're talking here about securing the cargo, not placing it in a particular position, as I understand. Yes. Is that correct? That is correct. All right. Now, let's assume that the trucker was negligent. Does that absolve the carrier? The shipper? The shipper, I should say. The law is, yes, that it does. Why? Why? Because the carrier, as Judge Fuentes began to point out, the carrier is bound both by federal regulations and state law to assure himself before leaving and driving that vehicle that the cargo is both properly distributed and adequately secured. Where in the regulation do you find any immunity for the shipper? I don't find any immunity for the shipper. However, I believe your question was, would the trucker still be liable? And the law is that he would still be liable, notwithstanding any negligence of the shipper. So even if the shipper had been negligent in the way the cargo was placed upon the trailer, the trucker, the driver or the carrier could still be liable as well because he or she did not... We have... There's been a big change in Pennsylvania law since Conquo and that was the substitution of comparative negligence for simple contributory negligence. Let's assume, if you will, that the trucker here was negligent. What about the carrier? Was it negligent? I keep getting the terms mixed up. That doesn't absolve the shipper. It doesn't absolve the... The shipper assumed the job of loading and securing the cargo, correct? No, that's incorrect. The shipper... You're jumping ahead. Sorry. The shipper did load and secure the cargo. Not in our case, Your Honor. No, no, why isn't it? Because in our case, Your Honor... Who put the cargo into the truck? The shipper loaded with a forklift the cargo onto the trailer. Okay, then how was it secured? The driver, in this case, Mr. Spence, was on the trailer and put load stars, little metal cleats underneath the wooden pallets as they were loaded. On other occasions, Mr. Spence had used... Okay, wait, wait. The shipper now sees that the stars are in place and the cargo is in place. Does that mean that the shipper completed his duty toward the trucker? If there's any duty here, yes, Your Honor. I would say that the shipper's duty is to properly load the cargo and that was discharged. You keep running away from the fact that the shipper took the... did the securing of the cargo. The shipper could have blocked the thing. The shipper could have put airbags to stop the cargo from shipping and the shipper did not. With all due respect, Your Honor, in this case, Mr. Spence, this was the fifth time he had picked up a load from us. On every occasion, he secured his own cargo. No, no, no, no, no, no, no. You keep talking about the plaintiff's negatives. I want you to talk about the defendant's activity here. Certainly. We could have taken some of those steps, but it wasn't our duty. I would argue that it was our duty to properly load the cargo. Wait, wait, wait. Why wasn't it your duty? Under the restatement, if you assume the duty of doing something and doing it negatively, you're liable. We assumed... That's correct. And we assumed the duty to load the cargo onto the trailer. We did not assume the duty to then secure the cargo. That was a separate step. But wait, where do you get that? You actually put the cargo in, and as I recall, the talker complained about too many in there, so you took some of them out and you put the elements back in, and you are the ones who put them on the stars. You are the ones who did not block the cargo in place. Judge Weiss, while that is correct, as Judge Fuentes pointed out in my opposing counsel's remarks, as a matter of policy, the shipper, the party in our case, does not... While we may know the final destination of where the cargo is going, we don't know the dimensions, the characteristics of the truck, the skills of the driver, the route, the particular route he or she is going to take. We don't know in specific detail what type of securement is necessary, and that's the obligation. We did not assume that duty. Actually, you did more loading and securing than any driver did, as a matter of fact. I would respectfully disagree, Your Honor. I think that in this case, we made load stars available as a courtesy. We had materials to block and brace available in our office. If they were asked for by Mr. Spence, we would have provided them, but it was not asked for. Again, you're getting back to Mr. Spence. If you knew that the blocking material was available, why didn't you produce it? Because you had assumed the obligation, as I see it on the restatement, to secure the cargo. We did not... We assumed the obligation to load the cargo, but we did not assume the obligation to make sure that it was adequately secured. That was the driver's responsibility, and we had signs, actually, in our loading dock saying that... Wait, wait, wait, wait, wait. You keep sliding on to the driver, and I want you to stick to the carrier, the shipper. The shipper put the cargo in. It can look at it. It knows if it will slide or not, and wasn't there expert testimony that the general practice in the industry was that the shipper would take care of loading and securing the cargo? The expert testified that it was customary for the shipper to block and brace. However, that has been contradicted by a lot of the case law in this area that says the industry custom is as the federal regulations say. All right. That's true. So you have a dispute there, don't you? But it's not a dispute that would avoid the need for summary judgment here, because we're really just focusing on the duty. Whether we were negligent depends on whether we owed a duty. Now, I don't understand if the testimony of the expert was it's customary in the industry for the shipper to block and secure the cargo. Why doesn't that set up a jury question? Your Honor, I don't think we get to that point, because as all the cases I've looked at, the And even in those cases, it said when the driver's not there to observe it and be aware of how it's being loaded. So I would argue that the duty that we had here was fulfilled, the duty to properly distribute and place the cargo on the trailer. You keep citing cases which you say hold that the shipper doesn't have the responsibility, but you have testimony now, a fact issue raised by the plaintiff, that the shipper customarily takes care of securing the cargo. Now, why doesn't that fact issue come as a jury question? I would say, Your Honor, because as the district court found, there's absolutely no basis anywhere, either in Pennsylvania law, common law, statutory, or otherwise, that we owed any kind of duty to secure the cargo. And the cases are consistent... I'm sorry, go ahead. Kunkel says the opposite. No, Kunkel, Your Honor, really only talks... If Kunkel imposes a duty on us, it's really the duty to make sure that the cargo is properly distributed and loaded on the trailer. Nothing in that case talks about the duty to then secure the cargo. Well, let's assume a situation where the cargo is very top-heavy and it's loaded so that it can easily tip over, and in such a situation that the stars could easily be pulled out if the cargo, top-heavy, slips over to one side or the other. I shouldn't say slip, I say flips over from one side to the other. Would you absolve the shipper in a situation like that? No, Your Honor. I think that if we created a dangerous condition in the way the cargo was loaded, then we would be... we could be negligent. Here, their own expert admitted that the way we loaded the cargo was proper, right down the middle, evenly distributed among the axles. But I would agree, you're right. If we loaded it in a way that was dangerous, then we would have some exposure for sure. And if you didn't secure this top-heavy cargo, you'd be negligent? Well, again, Your Honor, I would argue that we do not have the duty to secure the cargo. However, if we created a dangerous condition, if we didn't fulfill our duty to properly load the cargo, we would be negligent, yes. But that was not the case. I'm curious as to why you say you wouldn't be responsible under common law if you saw a dangerous condition in the top-heavy cargo and you did nothing about it? I think, Your Honor, we could be held liable if we did create a dangerous condition and if we knew it was dangerous and didn't warn the driver about it. But I think that's different than saying we have a duty to then take steps to secure the cargo. Was the cargo properly loaded? Was it done consistent with all your prior loading of this truck? It was, Your Honor. Yes, Your Honor, it was. Was there anything that was present to you from which you could determine the cargo was insecure? No, nothing whatsoever. So you followed your normal practice in loading this truck? We did. And this was the same way... Afterwards, I'm sorry to cut you off. No, it's okay. Do you go around and inspect to see if it's okay, you know, it's ready to go? Our employee loaded the cargo onto the trailer and saw that it was evenly distributed. And I think I can safely say if he saw there was a problem or, you know, an uneven distribution, he would have corrected it. What do you do after that? You close the doors or do you say to the shipper, okay, the ball is in your court? Well, after that, it's essentially the latter, Your Honor. The shipper then takes over, makes sure he does whatever he wants to do to feel that the load is secured. He closes the door of his trailer. He seals it. The driver? The driver. The driver, I'm sorry. The driver closes the door of his trailer, seals it, signs a bill of lading accepting the load, and then, you know, drives away to where his destination is. Was an inspection done by the driver in this case? Yes. The driver was right on the trailer during the whole process, visually observed it being loaded, even asked for some pallets to be taken off so he could put down some securement devices. Does it make a difference in this case that the driver, the first time he showed up to take a load, questioned the absence of blocking and bracing and was assured that this is the way we always do it and there's no problem? Your Honor, I don't think that it does. I mean, what is interesting with the history here, there were, this was the fifth occasion on which Mr. Spence picked up a load. He did ask on the first occasion, he complained about the way it was loaded. The way it was secured. Well, he didn't say the way it was secured. He didn't like, he said he didn't like the way it was loaded down the middle. We said we'd never had a problem before. On a subsequent, I'm sorry, Your Honor, just one more point. On a subsequent trip, he did have a load shift when he didn't use his load lock device. So he knew there was a risk. He knew there was a danger. There was nothing latent here. He agrees that it was obvious there was no blocking or bracing, but he also knew that there was a risk that the cargo could shift during transit. What is the rule that would control this case? Is it, I mean, we're talking about a duty, aren't we? We are, Your Honor, and I think that the shipper, the party in our case, would not have a duty to secure the cargo unless it was a sealed container, it was some defect that was latent, as the cases talk about, where the driver would not be able to tell or see or observe. But there are cases where the shipper has undertaken to load the cargo and has done it negligently. You know, you make a mistake. You're not saying that, in all cases, shippers should be absolved of responsibilities for negligently loading a cargo. No, I'm not, Your Honor. But I think in a case like this one. If you put the cargo on one side of the truck, it's kind of obvious that you're going to have a problem. Absolutely, there would be a problem for the shipper and negligence on the part of the shipper. But in a case like this one where the plaintiff's own expert agreed that the cargo was loaded and distributed properly, he was on the trailer, he knew that the cargo could shift because it had happened to him before, he had always secured, using his devices, the cargo. The duty was on the driver here to take steps that he or she, that he felt appropriate to secure the cargo. Okay, anything else? Thank you very much. Mr. George? The testimony about, the expert testimony about who secures the cargo is consistent with the regulations. The regulations do not require a driver to secure cargo. What they require is the driver to make sure that the cargo is secured. And the testimony from the expert is, and from Mr. Spence, that most of the securing is done by the shipper who loads. For example, this blocking... Then why did Mr. Spence tell the investigating officer that I should have secured the load better, but was relying on past experience? That's the testimony of the... Well, I think the man has just been in a serious accident. He's horribly injured. He has a head injury, he has broken bones. I think a lot of us would say, you know, something like that. But the question here that's important is, this is a duty case. The only question here is, does the shipper have a duty? You would like us to arrive at a ruling that says the shipper has a duty to load and secure cargo. A shipper who loads has a duty to make sure that the cargo is secured. Now, I mean, it would be a novel rule, I think. Wouldn't it run against the current? No. Well, first of all, this court is not writing on a blank slate. This court is bound in an Erie case by Kunkel. And Kunkel has a broad rule that says, if a shipper loads cargo, it has a duty to make sure that what it has put on, there's no dangerous condition. And we think that it's somewhat of a false distinction between, this is loading, this is securing. For example, as Judge Weiss asked about the shrink wrapping. Shrink wrapping is securing cargo. Shrink wrapping was done by ESOB. So it would shrunk wrap it so it wouldn't move. So to say, well, that's loading, that's securing. I think it's all a continuum of putting cargo on in a manner safe to carry. And the Pennsylvania Supreme Court, with its test is, when the shipper loads cargo, is it safe to carry? And that can have, it could either be unsafe because all the cargo is on one side and it's out of balance, or it could be unsafe because, as it turned out in this case, the cargo was in line, but for whatever reason, it was top heavy and was not properly blocked in so that when a curve was taken, it fell over. Now, you do concede, of course, that Mr. Spence also had the duty to secure. Absolutely. So this would be a comparative negligence. Absolutely. Judge Weiss, I think, made that point. And this is one that we have never run from. We embrace in our brief. There's no question we have a duty. Now, whether we breach the duty, that's a jury question.  Did the shipper also have a duty? And we think, at a minimum, the shipper had a duty, and we should have a jury trial to determine who breached the duty and what the respective fault is. Thank you very much. Thank you, Your Honor. Mr. Marion, thank you as well. Very well-argued case. We'll take the case under advisement. Thank you.